The Associated Broadcasters, Inc. v. Commissioner.
Associated Broadcasters, Inc. v. Commissioner
Docket No. 3499.
United States Tax Court
1945 Tax Ct. Memo LEXIS 251; 4 T.C.M. (CCH) 355; T.C.M. (RIA) 45115; March 31, 1945
*251 Petitioner owns and operates radio station KSFO. Certain amounts were paid by it to obtain the release of radio time retained by the former owner of the station and to procure for it additional time for Sunday broadcasts, pursuant to a contract to that effect. Held, that the amounts so paid are ordinary and necessary expenses of carrying on petitioner's business. Robert B. Gaylord, Esq., 1220 Russ Bldg., San Francisco, Calif., for the petitioner. Eugene Harpole, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's various tax liabilities as follows: Years
1939
1940
1941
Income tax
$3,972.70
$4,931.94
$ 1,470.40
Declared value ex-
cess profits tax
504.67
Excess profits tax
18,248.74
The sole issue is the deductibility, as ordinary and necessary expenses, of (1) the sum of $10,000 paid by the petitioner, in monthly installments, in each taxable year pursuant to a contract with the Tenth Avenue Baptist Church for the release of radio time owned by that organization, and (2) the sums of $6,074.07, $6,392.67 and $6,628.77 paid *252 in the respective taxable years to acquire Sunday radio time for the Church, pursuant to the same contract. Findings of Fact The petitioner, hereinafter sometimes called Associated, is a California corporation, with its principal office in San Francisco. It filed its income tax returns for the taxable years with the collector of internal revenue for the First District for the State of California. The petitioner was organized to acquire station KTAB, owned and operated by the Tenth Avenue Baptist Church of Oakland, California, hereinafter called the Church. The petitioner's capital stock consisted of 100,000 shares of the par value of $1.00 each. On November 24, 1926, the Commissioner of Corporations of California issued to the petitioner a permit to exchange certain shares of its stock for the assets of the station and the United States Government broadcasting license. No stock was issued under the permit and it was suspended on July 26, 1928. On September 27, 1928, a certificate of revivor was issued to the petitioner and on April 9, 1929, an amended permit was issued to it authorizing it to issue 25,000 shares of its stock in exchange for the radio station and its assets. On *253 April 10, 1929, 25,000 shares were issued to the Church, including seven shares issued in the name of qualifying directors. On December 31, 1928, the Church and the Pickwick Corporation, hereinafter called Pickwick, entered into a contract reciting that Associated owned and operated station KTAB and that Pickwick desired to purchase the capital stock (except qualifying shares to be transferred to nominees who were to act as directors) and that the certificates for such shares should be endorsed in blank and deposited in escrow, but that such stock should revert to the Church on July 6, 1948, or earlier, if so agreed. The Church reserved the right to designate one director. It was agreed that Pickwick and petitioner should enter into a contract with the Church, performance by petitioner to be guaranteed by Pickwick, agreeing that certain things should be done, i.e., that all debts of the petitioner should be paid by the date of reversion, the license be continued in good standing, all property be kept in good condition, and the programs broadcasted be maintained at a high standard. It would also provide that the petitioner should grant to the Church the use, "without charge", of the *254 station for broadcasting programs, one-half hour in the morning and one-half hour in the evening of each week day and not less than five hours each Sunday. Under certain conditions, controlled by the Church, Pickwick might acquire absolute title to the stock after July 6, 1948. Pickwick agreed to pay the Church $100 per month. All stock dividends on the stock would belong to Pickwick, which also guaranteed all obligations of the petitioner. The contract was not assignable without consent of the Church but the Church specifically agreed to consent to the assignment of Pickwick's contractual rights to Pickwick Broadcasting Corporation. Other provisions related to matters immaterial to the issue. On December 9, 1931, Pickwick executed an assignment of its interest in the December 31, 1928 contract between Pickwick and the Church (erroneously described as dated December 28, 1928) to Pickwick Broadcasting Corporation, Ltd., hereinafter called Pickwick Broadcasting. On February 8, 1932, the Church notified Pickwick that its purported assignment to Pickwick Broadcasting was without the consent of the Church and hence constituted a breach of the agreement of December 31, 1928, and that *255 the Church therefore elected to terminate that contract. On April 22, 1932, Pickwick Broadcasting assigned its rights in the December 31, 1928 contract to Thomas E. Morgan. On May 4, 1932, Morgan and the Church executed an agreement under which the Church transferred 24,999 shares of the petitioner's stock to Morgan and the latter succeeded to the rights and obligations of Pickwick in the December 31, 1928 agreement, with additional contractual modifications. Appropriate contracts and approvals were executed by Pickwick Broadcasting and its receiver confirming the transfer to Morgan. Pickwick Broadcasting further executed a bill of sale to Morgan covering all its right, title and interest in and to the equipment of station KTAB. The Church, Morgan and the petitioner executed the contract as agreed in the contract of December 31, 1928, between the Church and Pickwick. On May 4, 1932, Morgan and the Church completed the escrow held by R. B. Gaylord by delivering to him certain instructions and copies of the agreement of December 31, 1928, and the agreement between Morgan and the Church; and Morgan, the petitioner and the Church, both dated May 4, 1932. On February 20, 1933, the *256 petitioner, the Church, Morgan and W. I. Dumm entered into an agreement which provided that Dumm should succeed to the rights and obligations of Morgan under the contracts of May 4, 1932, with minor modifications, and that Dumm's personal liability should be limited to proceeds received by him from the petitioner and from the operation of station KTAB. The provisions relating to escrow were continued, the stock of the petitioner was reissued in the name of Dumm and placed in escrow with Gaylord. The same escrow instructions relating to the Morgan contracts were continued and made applicable to the Dumm agreement. The only escrow instructions to Gaylord were given to him at the time the Morgan deal was made and were accepted by Gaylord when Dumm succeeded Morgan. On May 20, 1935, the call letters of the broadcasting station were changed from KTAB to KSFO. On June 8, 1936 the petitioner, the Church and Dumm made an agreement which recited that the petitioner was about to enter into a contract with Columbia Broadcasting System, Inc., hereinafter called Columbia, for the leasing of station KSFO to Columbia or the Broadcasting of Columbia programs over that station. The Columbia contract *257 was duly entered into and operations under it continued throughout the taxable years. The agreement of June 8, 1936 provided that all existing contracts among the parties were modified and abrogated in so far as they were inconsistent with the Columbia contract but were to be reinstated upon the termination of the Columbia contract, which might continue until January 1, 1952. The Church released all payments due to date under prior contracts and in the Church $833.33 per month, payable monthly, during the life of the Columbia contract. The Church also released all rights and time on the station and control over the programs and policy of the station. In consideration of such release, the petitioner agreed to furnish to the Church a radio broadcasting outlet of one hour for each Sunday morning and evening service of the Church. The Church was also granted the use of the one-half hour period each week day, reserved to the petitioner in the Columbia contract. If Columbia should exercise its option to discontinue such reserved time, the petitioner agreed to pay to the Church $416.66 per month therefor. The contract also provided that if Columbia should elect to extend the term of its *258 contract beyond July 6, 1948, all contracts of the petitioner and the Church, including the escrow agreement, should be extended 30 days beyond the termination of the Columbia contract. Operations were carried on under this contract of June 8, 1936 during the taxable years in which payments aggregating $10,000 per year were made by the petitioner to the Church, as provided The petitioner also acquired radio time over station KROW for the Sunday broadcasts of the Church at a cost of $6,074.07, $6,392.67 and $6,628.77 for the respective taxable years. The payments, aggregating in excess of $16,000 each year, were claimed as deductions for ordinary and necessary expenses in petitioner's tax returns for 1939, 1940 and 1941. The proceeds from the release of time by the Church were included in the petitioner's income tax return, exceeded the $10,000 per year paid to the Church and thus resulted in a profit to the petitioner. The petitioner held the broadcasting license from the time of its incorporation through the taxable years. Under the Columbia contract the petitioner, through station KSFO, acted as an outlet for Columbia in the Bay region. The respondent disallowed the deduction *259 of the $10,000 per year claimed by the petitioner on the ground that the "amounts do not constitute allowable deductions within the meaning of section 23 (2) (sic) of the Internal Revenue Code or other provisions of said Code." No specific ground was stated for the disallowance of the amounts approximating $6,000 a year expended for procuring the radio time for the Sunday broadcasts. Opinion VAN FOSSAN, Judge: The single issue is whether or not the amounts expended by the petitioner for the release of one-half hour of radio time each week day and for the procurement of two hours of radio time for the Church each Sunday, constituted ordinary and necessary expenses of carrying on its business. At first glance the issue may seem to be beclouded by the numerous contracts and exchanges among the corporations and individuals, appearing in the record. However, when we bear in mind certain primary facts the situation becomes comparatively clear. The Church originally owned and operated radio station KTAB. That property consisted of the physical equipment required to broadcast and of the license or permission to use a definite wave length during the 24 hours of *260 the day. The Church desired to dispose of the station but to retain control of its policy, to approve its programs, and to use its facilities to broadcast its own programs. To accomplish this purpose, the petitioner corporation was organized and the station, its equipment, franchise, license, etc., were transferred to the petitioner in exchange for its capital stock. As long as the Church held all of the petitioner's stock and thus could control its every act, it was unnecessary to designate any definite length of time for the Church broadcasts. When a third party entered the picture the Church decided to protect itself by securing a definite allocation of broadcasting time. In Pickwick's contract the Church agreed to transfer the petitioner's stock (except qualifying shares) and thus to give up control of the situation. Pickwick, however, guaranteed that the petitioner would grant the desired radio time to the Church. By various transactions Morgan obtained the Pickwick contract and the escrow agreement was completed by the deposit of the petitioner's stock with Gaylord. Prior to May 4, 1932, no direct commitment had been made by the petitioner to reserve the broadcasting time *261 needed by the Church but on that day the petitioner became a party to a contract specifically granting and designating one-half hour's time daily and five hours on Sunday for the Church broadcasts. As the holder of the petitioner's stock, Morgan, also a party to the contract, in effect guaranteed the petitioner's performance of its promise. Later Dumm succeeded to Morgan's rights and major obligations under the contract. On June 8, 1936, the Church released all of its rights to broadcast over Station KSFO (formerly KTAB). In consideration of this release, the petitioner agreed to permit the Church to use the one-half hour daily (except Sunday) period reserved to the petitioner in its contract with Columbia, to pay the Church $833.33 per month and to secure for the Church a broadcasting outlet for its Sunday broadcasts. This contract was carried out. The petitioner paid $10,000 to the Church and also purchased radio time over another station for the Church's use at a cost of approximately $6,000 in each taxable year. The petitioner contends that the sums so spent constituted ordinary and necessary expenses in carrying on its business. We agree with this view. The practical effect *262 of the various transactions of the Church, set forth in the record, was that it disposed of all of its property to the petitioner except the right to broadcast over Station KTAB for the stated periods of time. On June 8, 1936, it still owned that excepted time. It sold a part of it to the petitioner for $10,000 a year, plus the agreement to furnish the Church the use of another station for Sunday broadcasts. The petitioner was established for the purpose of operating a radio station. It furnishes broadcasting time to sponsors from whom the petitioner obtains its revenue and hence its income. It deals in radio time as a trader would deal in any other commodity. If it buys that time for a certain price and sells it at a higher figure, it makes a profit. The record shows that just such a procedure was followed here. The petitioner included in its income tax returns the revenue from the broadcasts made during the periods acquired from the Church. The costs of such acquisition, pursuant to contract commitments, are clearly ordinary and necessary expenses of conducting the petitioner's business and are, therefore, allowable deductions. The respondent argues that the petitioner's payments *263 of the amounts in question are equivalent to distributions of its "stock in trade" to its stockholder without consideration. This argument is based on the theory that the Church is a "reversionary" stockholder while Dumm is but a "tentative" stockholder whose possession of the stock has no effect on the "distribution". The respondent misinterprets the phrase "without charge" found in the contract of December 31, 1928. That expression means merely that the Church did not have to pay for the radio time used by it under the earlier contract - not that there was no consideration for the later release of part of such time. We find that there was ample consideration for the release by the Church of a portion of its time, as set forth in the superseding contract of June 8, 1936. This fact, in itself, answers the respondent's argument but the record also shows that the Church completely disposed of its stock in the petitioner corporation for a period of 20 years and possibly longer. During the taxable years Dumm was the owner of this stock and enjoyed all the privileges of ownership except possession. The very transaction at issue reulted in profit to the petitioner and hence Dumm was its *264 potential beneficiary by way of dividends. Furthermore, the "stock in trade" of the petitioner was taken from, not given to, the Church. The money paid to it was a proper and valuable consideration for the release of the Church's radio time. The situation in the case at bar bears no resemblance to that found in cases in which a corporation makes distribution of its profits to its stockholders under guise of compensation, or other such items. Decision will be entered under Rule 50.